ZEPTNER V. ZEPTNER






COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-254-CV
 
OWEN C. ZEPTNER                                                                     
APPELLANT
V.
FRANCES R. ZEPTNER
                                                                 
APPELLEE
------------
FROM THE 322ND DISTRICT COURT OF TARRANT COUNTY
------------
OPINION ON REHEARING
------------
After reviewing Appellant's motion for rehearing, we deny the motion,
withdraw our March 20, 2003 opinion and judgment, and substitute the following
in their place.
In ten issues, Appellant Owen C. Zeptner complains about the trial court's
division of the community estate upon his divorce from Appellee Frances R.
Zeptner. Because we hold that the trial court abused its discretion in dividing
the community estate, we reverse and remand in part and affirm in part.
Factual
Background
Owen and Frances were married on or about November 26, 1986 and separated on
or about October 28, 1998. They had no children. Owen, Frances, and Paul Cary, a
tracing expert, testified at trial. During the trial, the trial court struck
both parties' other experts for discovery violations. Additionally, all of
Frances's exhibits were returned to her after trial at her attorney's request,
so they are not in the appellate record. In the divorce decree, the trial court
awarded Owen the following community property:
        (1) the lot at 100 East Little,
Hamilton, Texas;
        (2) the lot at 106 East Little,
Hamilton, Texas;
        (3) all household assets in his
possession or subject to his sole control;
        (4) all of his clothing, jewelry,
and personal effects;
        (5) all funds in his sole name or
subject to his sole control, including the business checking account located at
SouthTrust Bank;
        (6) all retirement funds due to
his own employment, including the Fidelity Investment IRA in the amount of
$11,239.80;
        (7) all union benefits;
        (8) all life insurance policies
insuring his life;
        (9) all brokerage accounts,
stocks, bonds, and mutual funds, and securities registered in his name,
including dividends, stock splits, and other connected privileges;
        (10) the 1994 Chevrolet pickup,
valued at $8,000;
        (11) the tractor and trailer,
valued at $5,000;
        (12) insurance checks, valued at
$496.95;
        (13) $24,000 from the Bank United
account; and
        (14) $80,000 enhancement value of
Petitioner's separate property business known as Accu-Tech Machine and
Manufacturing.
The trial court awarded Frances the following community property:
        (1) the community residence;
        (2) all household assets in her
possession or subject to her sole control;
        (3) all of her clothing, jewelry,
and personal effects;
        (4) all funds in her sole name or
subject to her sole control;
        (5) all retirement funds due to
her own employment, including the First Savings Bank IRA in the approximate
amount of $49,093.35 and the J.C. Penney's Retirement account in the approximate
amount of $16,000;
        (6) all union benefits;
        (7) all life insurance policies
insuring her life;
        (8) all brokerage accounts,
stocks, bonds, mutual funds, and securities registered in her name, including
dividends, stock splits, and other connected privileges, including fifteen
shares of Sears Roebuck and Company stock, five shares of Dean Witter Discover
and Company stock, and twenty-six shares of Allstate Corporation stock, valued
at $1300;
        (9) the 1998 Chevrolet Monte
Carlo, valued at $12,000;
        (10) the prepaid burial plan,
valued at $11,000;
        (11) $12,500, representing
one-half of the improvements made to Owen's separate residence at 104 E. Little,
Hamilton, Texas; and
        (12) $20,000 from the Bank United
account plus any remaining balance after Owen's award of $65,000 was paid.
Owen and Frances were each ordered to pay (a) any debts individually incurred
since the separation and (b) all encumbrances, taxes, liens, assessments, and
other charges due or to become due on the property each was awarded in the
decree unless the decree expressly provided otherwise. The trial court confirmed
the following as Owen's separate property: Accu-Tech Machine &
Manufacturing,

 including but not limited to all furniture, fixtures, machines, equipment,
 inventory, cash, receivables, accounts, goods, and supplies; all personal
 property used in connection with the operation of the business; and all rights
 and privileges, past, present, or future, arising out of or in connection with
 the operation of the business;

the Hamilton residence; and $41,000 in the Bank United account.
In his motion for new trial, Owen complained that the trial court had erred
in dividing the community estate by not considering the fact that Owen had
suffered a stroke and attendant medical problems after the trial was completed
but before judgment was rendered. Owen argued that as a result of his health
problems, he had been unable to work for about six months and could only work
part-time thereafter. Further, he alleged that he had incurred substantial bills
during this period, which he was unable to pay, and that he had a deficit of
$28,884.26, which the court had failed to consider in rendering judgment.
Finally, Owen stated that he had been forced to liquidate his Fidelity IRA, take
out a $5,500 loan, and collateralize the Hamilton lots, and that the trial court
had failed to consider these increased liabilities and decreased assets in its
property division.
Other than a medical records affidavit, there was apparently no evidence in
the record at the time the judgment was rendered to prove Owen's claims. The
same affidavit was attached to the motion for new trial, as well as a summary of
outstanding bills and available cash, but no medical records, notes, or
collateral agreements appear in the record before us. The trial court denied the
motion for new trial.
In findings of fact set out in the decree, the trial court found:

 1.         The value of the
 community residence is $120,000;
 2.         The value of 100 East
 Little Road, Hamilton, Texas is $7,000;
 3.         The value of 106 East
 Little Road, Hamilton, Texas is $6,000.
 4.         "[T]he 'enhanced
 value' of [Owen's] separate property business, Accu-Tech Machine and
 Manufacturing, . . . is $80,000.00."
 5.         "[R]eimbursable
 improvements" were made to [Owen's] separate property home "at 104
 East Little Road, in the amount of $25,000.00."
 6.         The Bank United account
 has an approximate balance of $81,000, $41,000 of which is Owen's separate
 property. The remaining $40,000 balance is community.
 7.         Frances's prepaid burial
 policy is valued at $11,000.
 8.         The present value of
 Frances's J.C. Penney retirement plan is $16,000.
 9.         Owen's tractor and
 trailer are valued at $5,000.
 10.         "[Owen's]
 reimbursement claims are valued at -0-."

Legal Analysis
A trial court is charged with dividing the community estate in a "just
and right" manner, considering the rights of both parties. Tex. Fam. Code
Ann. § 7.001 (Vernon 1998). The party complaining of the trial court's division
of property must demonstrate from evidence in the record that the division was
so unjust that the trial court abused its discretion. Pletcher v. Goetz,
9 S.W.3d 442, 446 (Tex. App.--Fort Worth 1999, pet. denied) (op. on reh'g).
Under an abuse of discretion standard, legal and factual sufficiency are
relevant factors in assessing whether the trial court abused its discretion. Beaumont
Bank v. Buller, 806 S.W.2d 223, 226 (Tex. 1991). They are not independent
grounds of error. Ditraglia v. Romano, 33 S.W.3d 886, 889 (Tex.
App.--Austin 2000, no pet.); Crawford v. Hope, 898 S.W.2d 937, 940
(Tex. App.--Amarillo 1995, writ denied). If there is any reasonable basis for
doing so, we must presume that the trial court exercised its discretion
properly. Pletcher, 9 S.W.3d at 446. We will not disturb the trial
court's division unless the record demonstrates "that the division was
clearly the result of an abuse of discretion." Id. That is, we
will not reverse the case unless the record clearly shows that the trial court
was acting arbitrarily or unreasonably. See Downer v. Aquamarine Operators,
Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S.
1159 (1986).
Reimbursement Claim For Ex-Husband's Lien
In issues six, seven, and eight, Owen complains about the trial court's
refusal to order reimbursement from Frances's separate estate to the community
estate for community funds that were used to pay off a lien to Frances's
ex-husband. Specifically, Owen complains that the trial court's finding that the
reimbursement claim was worth zero was against the great weight and
preponderance of the evidence. Alternatively, Owen claims that the evidence
conclusively established the claim's value at $16,000 (issue six); that the
trial court erred in failing to value the claim at $16,000 (issue seven); and
that the trial court abused its discretion by failing to consider the claim in
its division of the community estate (issue eight).
Findings of fact entered in a case tried to the court have the same force and
dignity as a jury's answers to jury questions. Anderson v. City of Seven
Points, 806 S.W.2d 791, 794 (Tex. 1991). Findings of fact are the exclusive
province of the trier of fact. Bellefonte Underwriters Ins. Co. v. Brown,
704 S.W.2d 742, 744-45 (Tex. 1986). A court of appeals cannot make findings of
fact; it can only "unfind" facts. Tex. Nat'l Bank v. Karnes,
717 S.W.2d 901, 903 (Tex. 1986). Unchallenged findings of fact are binding
unless the contrary is established as a matter of law or there is no evidence to
support the findings. McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex.
1986); Reliance Ins. Co. v. Denton Cent. Appraisal Dist., 999 S.W.2d
626, 629 (Tex. App.--Fort Worth 1999, no pet.). The trial court's findings of
fact are reviewable for legal and factual sufficiency of the evidence to support
them by the same standards that are applied in reviewing evidence supporting a
jury's answer. Ortiz v. Jones,917 S.W.2d 770, 772 (Tex. 1996); Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).
If an appellant is attacking the legal sufficiency of an adverse answer to an
issue on which he had the burden of proof, the appellant must overcome two
hurdles. Victoria Bank & Trust Co. v. Brady, 811 S.W.2d 931, 940
(Tex. 1991). First, the record must be examined for evidence that supports the
finding, while ignoring all evidence to the contrary. Second, if there is no
evidence to support the finding, then the entire record must be examined to see
if the contrary proposition is established as a matter of law. Id.; Sterner
v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989).
In reviewing an issue asserting that a finding is "against the great
weight and preponderance" of the evidence, we must consider and weigh all
of the evidence, both the evidence that tends to prove the existence of a vital
fact as well as evidence that tends to disprove its existence. Ames v. Ames,
776 S.W.2d 154, 158-59 (Tex. 1989), cert. denied, 494 U.S. 1080 (1990);
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). We do not have to give
details of supporting evidence when upholding factual sufficiency of the
evidence underlying the trial court's judgment. Ellis County State Bank v.
Keever, 888 S.W.2d 790, 794 (Tex. 1994).
Claims for reimbursement are equitable claims falling within the discretion
of the trial court. Vallone v. Vallone, 644 S.W.2d 455, 459 (Tex.
1982). They are not available as a matter of law. Id. These claims
accrue when an estate's funds or assets are used to benefit another estate
without a corresponding benefit in return. Id. Whether the situation
involves the payment of a purchase money debt or a capital improvement, the
enhancement value is the measure of reimbursement. Penick v. Penick,
783 S.W.2d 194, 197 (Tex. 1988). In deciding the value of a claim for
reimbursement, the benefits to the payor estate must be offset against the
benefits to the payee estate. Id. Courts look at the costs to both
estates as well. Gutierrez v. Gutierrez, 791 S.W.2d 659, 662-63 (Tex.
App.--San Antonio 1990, no writ). In evaluating the merits of a claim for
reimbursement, the trial court should consider "all the facts and
circumstances and determine what is fair, just, and equitable." Penick,
783 S.W.2d at 197. The trial court should not simply "return to the [payor
estate] the actual amount advanced to reduce the principal indebtedness on the
[payee estate's] property without regard to the benefits received in return by
the [payor] estate." Id. An "equitable claim for
reimbursement is not merely a balancing of the ledgers between the marital
estates." Id. at 198.
The party claiming reimbursement bears the burden of establishing the net
benefit to the payee estate. Vallone, 644 S.W.2d at 459; Zieba v.
Martin, 928 S.W.2d 782, 788-89 (Tex. App.--Houston [14th Dist.]
1996, no writ) (op. on reh'g). This burden includes the responsibility to prove
the offsetting benefit to the payor estate. Zieba, 928 S.W.2d at 788;
Gutierrez, 791 S.W.2d at 665. Finally, the trial court's discretion in
deciding and evaluating this equitable claim for reimbursement is just as broad
as its discretion in dividing the community estate. Penick, 783 S.W.2d
at 198.
In her brief, Frances contends that the trial court did not abuse its
discretion in denying reimbursement to the community for funds expended in
extinguishing the lien because the funds were either sole management or joint
management community property. Alternatively, Frances contends that the trial
court did not abuse its discretion in denying reimbursement to the community for
funds expended in extinguishing the lien because the obligation to her
ex-husband was imposed by court order. We hold that the trial court did not
abuse its discretion in refusing to award reimbursement in this instance because
Owen did not establish the net benefit to Frances's separate property estate.
The record reveals conflicting testimony about the amount repaid by the
community and the source of the funds. Owen testified that he wrote Frances two
checks from the business account for a total of $16,600. Frances testified that
those checks were to repay her for money that she had loaned Owen. She also
testified that she had paid off the lien to her ex-husband from money that she
had earned and that the note had been for $15,000. In his direct examination of
Frances, Owen's attorney stated:

         Q. . . . In your deposition on
 page 74, line 23, I ask[ed] you: "Wasn't there a note to your ex-husband
 of 16,600 that was an obligation from a prior divorce?" And how did you
 answer?
         A. It wasn't 16,600. It was
 15,000.
         Q. Okay. I didn't ask you that.
 How did you answer?
         A. Well, I answered yes, but --

Because the evidence conflicted on the amount of the payment to extinguish
the note, Owen failed to conclusively prove the maximum benefit to Frances's
separate estate; that is, Owen failed to prove the actual amount that the
community paid Frances's ex-husband to extinguish the lien. See Vallone,
644 S.W.2d at 459; Zieba, 928 S.W.2d at 788-89; Gutierrez, 791
S.W.2d at 665.
Owen also failed to establish the offsetting benefits to the community
estate. Frances testified that the couple lived in her home eight years before
she sold it and that Owen never contributed any rent or mortgage payments for
the privilege. She also testified that her total proceeds from the sale of the
home went toward the purchase of the community residence. Owen testified that
the community made some improvements to the home, including a pool. He also
offered evidence that the community did make the mortgage payments from the time
of marriage until the home was sold. He disputed Frances's contention that the
sales proceeds went toward the purchase of the community residence.
Owen offered no evidence about the offsetting benefits to the community of
extinguishing the lien. Vallone, 644 S.W.2d at 459; Zieba, 928
S.W.2d at 788; Gutierrez, 791 S.W.2d at 665. We note that as long as
the ex-husband had a lien on the house, the house would be subject to
foreclosure. Owen did not establish the benefit the community derived from
living in the home almost three years without the secondary lien, nor did he
establish the benefit the community derived from Frances's ability to sell the
home less than a year before the purchase of the community residence, free of
the lien and free of the need to secure a release. Additionally, to the extent
that Owen's testimony is true, his payments to Frances to extinguish the lien
appear completely voluntary, and the record contains no evidence or allegation
that Frances deceived him about the existence of the lien or to get money to pay
the lien.
The trial judge was the sole judge of the facts in this case. He was
therefore the sole judge of the credibility of the evidence and the weight to
assign it. Montgomery Indep. Sch. Dist. v. Davis, 34 S.W.3d 559, 567
(Tex. 2000); Webb v. Jorns, 488 S.W.2d 407, 411 (Tex. 1972). He was
also free to resolve any inconsistencies. Davis, 34 S.W.3d at 567; Webb,
488 S.W.2d at 411. The trial judge could have reasonably deduced that the money
that extinguished the loan was a gift or that any benefit to Frances's estate
was offset by the community's use of her home and the sales proceeds thereof. He
could have also reasonably concluded, as we have, that Owen failed to meet his
burden to establish the net benefit to the community estate. Because Owen did
not meet his burden of proof, the evidence necessarily did not conclusively
establish that the community was entitled to reimbursement for the community
funds expended to pay off the lien, nor was the trial court's finding that the
claim was worth nothing against the great weight and preponderance of the
evidence. Given that reimbursement is an equitable remedy within the discretion
of the trial court and not available as a matter of law, we cannot say that the
trial court abused its discretion in refusing to award reimbursement to the
community in this instance. Vallone, 644 S.W.2d at 459. We overrule
Owen's sixth, seventh, and eighth issues.
Reimbursement Claim for Improvements to Owen's
Separate Residence
In issues three, four, and five, Owen complains about the trial court's
finding that the community was entitled to reimbursement of $25,000 for
improvements made to Owen's separate residence at the community's expense.
Specifically, Owen contends that there was no evidence, or insufficient
evidence, to support the finding (issue three); that the trial court erred in
valuing the claim at $25,000 (issue four); and that the trial court abused its
discretion in considering the claim in dividing the community estate (issue
five). Again, we note that the legal and factual sufficiency standards of review
are subsumed under the abuse of discretion standard. Beaumont Bank, 806
S.W.2d at 226. They are not independent grounds of error. Ditraglia, 33
S.W.3d at 889.
In determining a "no-evidence" issue, we are to consider only the
evidence and inferences that tend to support the finding and disregard all
evidence and inferences to the contrary. Bradford v. Vento, 48 S.W.3d
749, 754 (Tex. 2001); Cont'l Coffee Prods. Co. v. Cazarez, 937 S.W.2d
444, 450 (Tex. 1996); In re King's Estate, 150 Tex. 662, 244 S.W.2d
660, 661 (1951). Anything more than a scintilla of evidence is legally
sufficient to support the finding. Cazarez, 937 S.W.2d at 450;
Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex. 1996).
An assertion that the evidence is "insufficient" to support a fact
finding means that the evidence supporting the finding is so weak or the
evidence to the contrary is so overwhelming that the answer should be set aside
and a new trial ordered. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.
1965). We are required to consider all of the evidence in the case in making
this determination. Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402,
406-07 (Tex.), cert. denied, 525 U.S. 1017 (1998).
The measure of reimbursement when one marital estate expends funds or assets
to make capital improvements to the property of another marital estate is the
enhancement in value to the receiving estate. Anderson v. Gilliland,
684 S.W.2d 673, 675 (Tex. 1985); Cook v. Cook, 693 S.W.2d 785, 786
(Tex. App.--Fort Worth 1985, no writ). This enhancement is the difference
between the fair market value before any improvements and the fair market value
after the improvements made during the marriage. Vickery v. Vickery,
999 S.W.2d 342, 371 (Tex. 1999); Anderson, 684 S.W.2d at 675. It is not
the actual cost. Vickery, 999 S.W.2d at 371; Anderson, 684
S.W.2d at 675. The party claiming reimbursement bears the burden of establishing
the net benefit to the payee estate. Vallone, 644 S.W.2d at 459; Zieba,
928 S.W.2d at 788-89.
Frances testified that Owen told her that he spent about $45,000 during the
marriage on improvements to the Hamilton residence. Owen testified that the
property was appraised at $23,800 for tax purposes. His exhibit 18, admitted
into evidence, shows that the property was appraised at $23,890 on January 1,
1999 and January 1, 2000. There was no evidence about the value of the property
before the improvements were added. The evidence was thus both legally and
factually insufficient to support the finding that the value of the
reimbursement claim was $25,000. Frances did not satisfy her burden of proving
the enhanced value to the Hamilton property. Consequently, we hold that the
trial court abused its discretion in awarding the community reimbursement of
$25,000 for the improvements made to that property. We sustain Owen's fourth and
fifth issues.
Accu-Tech
In his first two issues, which he argues together, Owen challenges the
valuation of Accu-Tech. In issue one, Owen contends that there was no evidence
or insufficient evidence to support the valuation of Accu-Tech at $80,000. In
issue two, he contends that the trial court erred in valuing Accu-Tech at its
"enhanced value" rather than at its fair market value. We note at the
outset that the trial court did not assign a value to Accu-Tech, which was
Owen's sole proprietorship before the marriage and thus his separate property.
The court only assigned a value of $80,000 to the community's reimbursement
claim.
Owen argues that this award was improperly comprised of equipment purchased
during the marriage and professional goodwill. We disagree. This award did not
include a value for the equipment because elsewhere in the decree, the trial
court awarded Owen as his separate property all equipment used by the business,
even the equipment purchased during the marriage. Owen also contends that the
trial court should not have included goodwill in the computation of the value of
Accu-Tech because the only goodwill in Accu-Tech was his professional goodwill.
We agree with Owen that professional goodwill is not a community asset subject
to division. Nail v. Nail, 486 S.W.2d 761, 764 (Tex. 1972). However,
our review of the record reveals no evidence of either commercial goodwill or
professional goodwill, nor does it show that the trial court considered goodwill
in arriving at the $80,000 figure.
Because the trial court awarded Owen the equipment as his separate property
and because we see no evidence of goodwill in the record, we reject Owen's
premise that the $80,000 "enhanced value" represents the trial court's
valuation of the equipment and professional goodwill.
Owen also contends that "enhanced value" is a measure of
reimbursement, not a method of valuation, and that no reimbursement was
appropriate with respect to Accu-Tech. Within the discussion of his issues, Owen
specifically argues that any equipment acquired during the marriage and used by
the business was community property and that the trial court should have divided
either the equipment or its fair market value between the parties as community
property. It is true that the equipment acquired during the marriage but used by
the business was community property. Tex. Fam. Code Ann. § 3.003(a). The trial
court erred by not characterizing the equipment as community property and by
confirming it as Owen's separate property.
In addition to the equipment that should have been characterized as community
property, our review of the record shows that the community had at least two
reimbursement claims against Owen's separate estate regarding Accu-Tech that the
trial court could have properly recognized if Frances had satisfied her burden
of proof--a claim for community funds spent on improvements and a claim for
Owen's time, talent, and labor expended to unreasonably benefit his separate
estate.
According to the evidence, equipment was purchased during the marriage at a
cost of over $110,000. Frances's reimbursement claim regarding Accu-Tech in her
inventory and appraisement, which was admitted into evidence, provided:

 At the time of marriage, Accu-Tech was small, with manual equipment, and no
 revenue. Since the date of marriage, [an] expensive computerized numerical
 control (CNC) machine was purchased, along with continual upgrades, 3
 computers, and a milling machine, that was purchased to enhance the business
 known as Accu-Tech. Amount claimed: $130,000.

Because the amount claimed is more than the cost of the equipment, it is
clear from this statement that Frances combined the value of the equipment,
whatever she thought it was, with the increase in the value of the business to
reach her claim of $130,000.
Frances testified that Owen spent about $40,000 on improving the land and
building on which Accu-Tech is located. Again, the measure of reimbursement when
one marital estate expends funds or assets to improve the real property of
another marital estate is the enhancement in value to the receiving estate. Anderson,
684 S.W.2d at 675; Cook, 693 S.W.2d at 786. It is not the actual cost. Vickery,
999 S.W.2d at 371; Anderson, 684 S.W.2d at 675. The party claiming
reimbursement bears the burden of establishing the net benefit to the payee
estate. Vallone, 644 S.W.2d at 459; Zieba, 928 S.W.2d at
788-89. Frances offered no evidence that the fair market value of the business
increased after the improvements. Consequently, she did not satisfy her burden
on this claim.
Additionally, the community estate has a reimbursement claim when the
community's time, talent, and labor are used to benefit and enhance a separate
estate beyond what is reasonably necessary to maintain and preserve the separate
estate without adequately compensating the community. Jensen v. Jensen,
665 S.W.2d 107, 109 (Tex. 1984) (op. on reh'g); Vallone, 644 S.W.2d at
459; Lifshutz v. Lifshutz, 61 S.W.3d 511, 519 (Tex. App.--San Antonio
2001, pet. denied). The burden of proving the claim rests with the claimant. Vallone,
644 S.W.2d at 459. The burden of securing a finding also rests with the
claimant. Id.
Owen testified that Accu-Tech was worth $30,500 at the time of trial. His
income tax returns showed an accumulated net profit of about $35,000 for the
last five fiscal years before the divorce. He admitted to several cash
disbursements from company funds during the marriage, from which the judge could
have inferred that the community was inadequately compensated, including a 1995
personal loan of $22,500 to an acquaintance and several disbursements to his
adult sons by a prior marriage. Frances's testimony also demonstrated that Owen
provided her with very little money to pay the mortgage and other household
expenses during the marriage. During Owen's attorney's cross-examination of
Frances, three checks Owen wrote to Frances that she endorsed were admitted into
evidence. They totaled $2,800 and spanned over five years. The evidence also
showed disbursements from the business for a down payment on the community
residence and for a car.
Despite all this evidence, Frances did not provide evidence to establish the
value of Owen's services or how much income the community had already received
from the business. She thus did not establish the value of the reimbursement
claim for time, toil, and efforts expended to enhance Accu-Tech. See Jensen,
665 S.W.2d at 109-110; Gutierrez v. Gutierrez, 791 S.W.2d 659, 665
(Tex. App.--San Antonio 1990, no writ); Rogers v. Rogers, 754 S.W.2d
236, 239 (Tex. App.--Houston [1st Dist.] 1988, no writ). Because
Frances failed to meet her burden of establishing the community's reimbursement
claim against Accu-Tech, the trial court abused its discretion in awarding
reimbursement of $80,000. We therefore agree with Owen that there was no
evidence to support a reimbursement award of $80,000 with respect to Accu-Tech
and that no reimbursement was appropriate with respect to Accu-Tech.
Frances asserts in her brief that issues one and two are moot because Owen
received the entire value of Accu-Tech, including the equipment purchased during
the marriage. We cannot agree. The community's worth was distorted negatively by
whatever value the trial court assigned to the equipment improperly
characterized as Owen's separate property. This error benefitted Owen. But the
inappropriate reimbursement of $80,000 to the community artificially inflated
the community's worth and decreased the actual value of Owen's share of the
community estate. That is, Owen's portion of the community included $80,000
worth of nothing, because the reimbursement claims were not proved, but
Frances's portion of the community, which included not reimbursement but actual,
tangible assets, was comprised of property with actual value. She thus got a
higher dollar value and a higher percentage of the community estate than the
trial court intended.
Because there is no evidence that the community had an $80,000 reimbursement
claim against his separate estate, we sustain Owen's first issue. Because the
equipment purchased by the community but used by Accu-Tech was incorrectly
characterized as Owen's separate property, we sustain Owen's second issue in
part. See Tex. R. App. P. 38.1(e) ("The statement of an issue or
point will be treated as covering every subsidiary question that is fairly
included.").
Division of the Community Estate
In his ninth issue, Owen asserts that the trial court abused its discretion
by failing to divide the community in a just and right manner. See Tex.
Fam. Code Ann. § 7.001 (stating that a trial court is required to divide the
community estate in a just and right manner). While the division does not have
to be equal, it does have to be equitable. O'Carolan v. Hopper, 71
S.W.3d 529, 532 (Tex. App.--Austin 2002, no pet.); Zieba, 928 S.W.2d at
790. The trial court's discretion to divide the community estate is broad but
not unfettered; the court must have some reasonable basis for an unequal
division of the property. O'Carolan, 71 S.W.3d at 532; Zieba,
928 S.W.2d at 790. The party complaining of the trial court's division must
demonstrate from evidence in the record that the division was so unjust that the
trial court abused its discretion. Pletcher, 9 S.W.3d at 446. The
values of individual items "are evidentiary to the ultimate issue of
whether the trial court divided the properties in a just and right manner."
Finch v. Finch, 825 S.W.2d 218, 221 (Tex. App.--Houston [1stDist.]
1992, no writ). When a mischaracterization has more than a minimal impact upon
the trial court's division, we must remand the case to the trial court for a
just and right division based upon the correct characterization of the property.
McElwee v. McElwee, 911 S.W.2d 182, 189 (Tex. App.--Houston [1st
Dist.] 1995, pet. denied).
We have already held that the trial court erred in mischaracterizing
community property as Owen's separate property. Owen claims that the trial court
should have valued the equipment at its fair market value. An asset's fair
market value is usually the best evidence of its value. See Beavers
v. Beavers, 675 S.W.2d 296, 299 (Tex. App.--Dallas 1984, no writ). Owen's
testimony and balance sheet placed the fair market value of the equipment at
$21,650. Our review of the record reveals no evidence offered by Frances on the
fair market value of the equipment alone, nor does it show the value the trial
court placed on the equipment.
We have also already held that the trial court abused its discretion in
awarding the community reimbursement for improvements made to Owen's Hamilton
residence and to Accu-Tech. The $25,0000 reimbursement for improvements to the
Hamilton residence, however, was split equally between the parties; it therefore
did not affect the division. The $80,000 reimbursement for improvements to
Accu-Tech, as explained above, did affect the division.
From our review of the decree, the trial court awarded Owen roughly forty
percent and Frances roughly sixty percent of a community estate worth about
$416,140, including the reimbursement awards. When we deduct the reimbursement
awards from the community, however, Owen received about 25% and Frances received
about 75% of a community estate worth about $311,140. Even if we added $21,650,
the fair value of the improperly characterized equipment according to Owen, back
into the community estate solely for our calculation of the total magnitude of
the errors, Owen's share of the community estate would still only be about 30%
to Frances's 70%, or about $103,400 to her $229,400. Based on the record before
us, we cannot say that the trial court's errors had only a minimal impact on the
division. The trial court intended to award Owen about forty percent of the
community; Owen only received about thirty percent.
Consequently, based on the record before us, we hold that the trial court did
not divide the community estate in a just and right manner and that the division
was so unjust that the trial court's actions amounted to an abuse of discretion
on this ultimate issue. We sustain Owen's ninth issue.
In his tenth issue, Owen contends that "the errors of law made by the
trial court probably caused the rendition of an improper judgment by incorrectly
defining the parties['] community estate which then prevented the trial court
from dividing the estate in a just and right manner." In other words, Owen
contends that the trial court's abuse of discretion was harmful. See
Tex. R. App. P. 44.1(a). We agree and sustain this issue. "Once reversible
error affecting the 'just and right' division of the community estate is found,
the court of appeals must remand the entire community estate for a new
division." Jacobs v. Jacobs, 687 S.W.2d 731, 733 (Tex. 1985).
Because of our disposition of this issue, we do not address Owen's complaints
about the trial court's failure to grant a new trial. See Tex. R. App.
P. 47.1.
Conclusion
Having held that the trial court abused its discretion in dividing the
community estate, we affirm the parties' divorce, but we reverse and remand this
case to the trial court for a new division of the community estate.
 
                                                           
ANNE GARDNER
                                                           
JUSTICE

PANEL A: CAYCE, C.J.; DAY and GARDNER, JJ.
 
DELIVERED: June 26, 2003